UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH BOYKINS,

<table>
<tr><td></td><td>REPORT</td></tr>
</table>

|                                              | REPORT |
|----------------------------------------------|--------|

                      Petitioner,                        and

           v.                          RECOMMENDATION

SUPERINTENDENT AUBURN CORRECTIONAL      12-CV-00548S(F)
  FACILITY,

                      Respondent.
_____

APPEARANCES:          KENNETH BOYKINS, *Pro Se*
                         10-B-2242
                         Auburn Correctional Facility
                         Box 618
                         Auburn, New York  13021

                         ERIC T. SCHNEIDERMAN
                         ATTORNEY GENERAL of the STATE of NEW YORK
                         Attorney for Respondent
                         ALYSON J. GILL
                         Assistant Attorney General, of Counsel
                         120 Broadway
                         New York, New York  10271

## **JURISDICTION**

Petitioner commenced this action on June 13, 2012, requesting habeas relief

pursuant to 28 U.S.C. § 2254.  On October 29, 2014, Honorable William M. Skretny

referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) for

report and recommendation.

## BACKGROUND

Petitioner Kenneth Boykins ("Petitioner" or "Boykins"), proceeding *pro se*, filed a petition (Dkt. 1), seeking habeas relief challenging his September 17, 2007, conviction by jury in New York Supreme Court, Monroe County, on multiple charges pertaining to the September 14, 2006 burglary of the Rochester, New York residence of Ramon Releford ("Releford"), during which both Releford and his girlfriend's 10-year old son, Shalik ("Shalik"), suffered gunshot wounds, for which Petitioner, on November 14, 2006, along with co-defendant Charles Kevin Wilson ("Wilson" or "co-defendant"), was indicted on eleven counts ("Indictment").  SR[1] 1-11.  Petitioner was first tried before Acting New York Supreme Court Justice Stephen R. Sirkin, in a four-day trial commencing June 11, 2007 ("first trial").  Two of the Indictment's counts were dismissed prior to submitting the case to the jury at the first trial.[2]  On June 15, 2007, Petitioner's first trial on the charges ended in a deadlocked jury on all nine remaining counts of the Indictment.  FT Tr. at 749.[3]

In a second four-day trial commencing on August 15, 2007, and ending August 20, 2007 ("second trial"), Plaintiff, along with his co-defendant, was retried and convicted on the Indictment's remaining nine counts.  ST Tr. at 778-83.[4]  In particular, Plaintiff was convicted of one count of attempted murder in the second degree in violation of New York Penal Law ("N.Y. Penal Law") §§ 110.00, 125.25(1), two counts of

---

[1] References to "SR" are to the pages of the State Record (Dkt. 11-2).
[2] The dismissed counts included robbery in the second degree in violation of N.Y. Penal Law § 160.10(2)(a), in connection with the forcible stealing of property from Releford, during the commission of which crime Shalik was injured, and burglary in the first degree in violation of N.Y. Penal Law § 140.30(1), in connection with the second entry in to the residence on September 14, 2006.
[3] References to "FT Tr. at __" are to the pages of the transcript for the first trial, filed as Vol. II of III (Dkts. 13-1 through 13-3).
[4] References to "ST Tr. at __" are to the pages of the transcript for the second trial, filed as Vol. III of III (Dkts. 13-4 through 13-6).

robbery in the first degree in violation of N.Y. Penal Law § 160.15(1), (2), two counts of

assault in the first degree in violation of N.Y. Penal Law § 120.10(1), (4), one count of

assault in the second degree in violation of N.Y. Penal Law § 120.05(6), three counts of

burglary in the first degree in violation of N.Y. Penal Law § 140.30(1), (2), for which

Plaintiff was sentenced as a second-felony offender to an aggregate term of

incarceration of 82 years, to be followed by 20 years of post-release supervision, which

sentence, by operation of N.Y. Penal Law § 70.30(1)(e)(iv), was later reduced to a

determinate sentence of 50 years.  On June 10, 2011, Petitioner's conviction was

modified by the New York State Supreme Court Appellate Division, Fourth Department

("the Appellate Division") with the second degree attempted murder conviction reversed

and that charge dismissed.  *People v. Boykins*, 924 N.Y.S.2d 711 (4th Dep't. 2011).  The

Appellate Division also directed that Plaintiff's sentences on the remaining counts on

which Plaintiff was convicted shall run concurrently, and affirmed the judgment as

modified.  *Id.*  On August 29, 2011, leave to appeal to the New York Court of Appeals

was denied.  *People v. Boykins*, 954 N.E.2d 93 (N.Y. 2011).[5]

On June 13, 2012, Plaintiff filed his original petition (Dkt. 1) ("Petition"), asserting

no grounds for relief.  Accordingly, upon screening the Petition, District Judge David G.

Larimer returned the Petition to Petitioner with directions to specify, by October 1, 2012,

---

[5] Because Petitioner did not petition for *certiorari* in the United States Supreme Court, his conviction was considered final on November 28, 2011, *i.e.*, 90 days after the Court of Appeals denied leave to appeal on August 29, 2011.  28 U.S.C. § 2244(d)(1)(A) (providing the one-year limitations period for habeas corpus petitions runs from "the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review.").  *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (considering, for purposes of habeas corpus limitations period, state court conviction to be final 90 days after Court of Appeals denied leave to appeal where petitioner did not petition for *certiorari* from the Supreme Court).  *See also Hizbullahankhamon v. Walker*, 255 F.3d 65, 68 (2d Cir. 2001) (acknowledging habeas petitioner's state court conviction became final on "the date on which the time to petition for *certiorari* to the Supreme Court of the United States expired." (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998))).

the grounds on which habeas corpus relief is sought under 28 U.S.C. § 2254, as well as the facts supporting such grounds.  August 27, 2012 Decision and Order (Dkt. 8), at 3-4. Accordingly, on September 17, 2012, Plaintiff filed the Amended Petition (Dkt. 9) ("Amended Petition"), raising four grounds for habeas relief, including (1) the attempted murder in the second degree conviction "was intertwined with other shootings" rendering it unclear as to which shooting the jury's verdict was reached, Amended Petition, Ground one ("First Ground"); (2) trial court error in failing to specify the sentences for two counts were to run concurrently with each other given that "both counts contain overlapping elements,"[6] id., Ground two ("Second Ground"); (3) trial court error in failing to sever the trials of Petitioner and his co-defendant, id., Ground three ("Third Ground"); and (4) a "material element" of the second degree assault count was omitted from the indictment, rendering the count jurisdictionally defective.  Id., Ground four ("Fourth Ground").  On September 24, 2014, Respondent filed an Answer (Dkt. 11) ("Answer"), the Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus (Dkt. 11-1) ("Respondent's Memorandum"), the State Record (Dkt. 11-2) ("SR"), and the State Court Transcripts (Dkt. 13 through 13-6) ("TR.").[7]  In a Decision and Order filed February 10, 2015 (Dkt. 21) ("February 10, 2015 D&O"), the undersigned denied a motion filed by Petitioner on December 2, 2014 (Dkt. 17) seeking to strike the Answer and requesting a stay to permit Plaintiff to exhaust additional claims for actual innocence based on unidentified newly discovered evidence and ineffective

---

[6] Although Petitioner does not specify for which two counts he maintains the sentences imposed should run concurrently, in his direct appeal Petitioner argued that the sentences for all the assault, robbery, and burglary counts should run concurrently with each other.  Petitioner's Appellate Division Brief, copies filed as an attachment to the Amended Complaint (Dkt. 9) at 24-25, and as part of the State Record (Dkt. 11-2).

[7] Paper copies of the SR and the TR were filed on October 6, 2014.

assistance of counsel based on Petitioner's trial counsel's failure to call alibi witnesses, which claims Petitioner planned to include in a further amended petition.  By Order filed June 5, 2015 (Dkt. 26), Judge Skretny denied Petitioner's objections (Dkt. 22) to the February 10, 2015 D&O.  Oral argument was deemed unnecessary.

Based on the following, the Amended Petition should be DISMISSED.


## **FACTS**[8]

On the evening of September 14, 2006, one Ramon Releford ("Releford" or "the victim"), his three-year old daughter Mahogany ("Mahogany"), and the children of his girlfriend Nakia Davidson ("Davidson"), specifically, Davidson's 14-year old daughter Desiah Jones ("Desiah"), and 10-year old son Shalik Maxwell ("Shalik"), [9] returned to their residence located at 181 Shelter Street in Rochester, New York ("the house" or "the residence"), with take-out food from a Wendy's Restaurant ("Wendy's"), which they intended to eat for dinner.  Upon arriving at the residence, the four entered the living room where the children sat on the couch in the living room to eat their take-out food from Wendy's and Releford stood nearby when they heard people ("the intruders"), coming down the stairs from the residence's second floor into the den, located next to the living room.  (ST Tr. at 319, 393-94, 396, 569-70).  The intruders were armed with handguns and demanded money from Releford, who complied by throwing either money (ST Tr. at 326-28), or his wallet (ST Tr. at 487), and car keys (ST Tr. at 540-41), on the floor.  Both intruders then fired their weapons, striking Releford multiple times in the stomach and Shalik in his left knee and right thigh and hip.  FT Tr. at 215-16; ST Tr.

---

[8] Taken from the Amended Petition, Response, Memorandum, exhibits and state court records filed in this action.
[9] Shalik's name is sometimes spelled "Shalike" and the record does not indicate which spelling is correct.

at 488.  The intruders picked up the money and car keys from the floor and ran out of

the house and Desiah locked the front door.  Within a matter of seconds, someone

kicked in the front door, entered the residence, walked over to where Releford lay on

the floor of the living room, and fired two more gunshots into Releford's face.  A second

man stood on the front porch behind the gunman.  Neither Releford, Desiah, nor Shalik

was ever able to positively identify the person who shot Releford in the face as one of

the two intruders who had fired the earlier shots, nor the man who remained outside on

the porch.  After the shooter left the residence, Desiah telephoned her mother and the

police.

Shalik sustained gunshot wounds to his left knee and right thigh and hip, while

Releford sustained two gunshot wounds to his head, causing him to lose an eye, and

multiple gunshots to his body for which Releford initially underwent "damage control"

surgery to stop the bleeding, during which a breathing tube was inserted into Releford's

windpipe, remaining there until October 11, 2006.  Releford was kept chemically

paralyzed and sedated throughout his recovery.  Despite their injuries, both Releford

and Shalik survived, although Releford lost the sight in his right eye and underwent

several surgeries and required extensive physical therapy.  ST Tr. at 542.

Releford, Desiah and Shalik later identified the intruders as Petitioner Kenneth

Boykins ("Petitioner" or "Boykins"), and co-defendant Charles Kevin Wilson ("co-

defendant" or "Wilson").  Specifically, on the evening of the shootings, September 14,

2006, Rochester Police Department Investigator Matthew Hill ("Hill"), was unable to

speak with Releford, who was in surgery, or Shalik, who was too upset to speak, but at

the hospital spoke with Desiah, ST Tr. at 432-33, 457-58, 466, who described the

incident as, upon arriving home on September 14, 2006, being confronted inside the home by two African-American males with handguns, who argued with Releford, fired shots before leaving through the home's front door, and then a second entry by intruders who fired more shots. *Id.* at 369-72 (Desiah).[10]  On the night of September 14, 2006, however, Desiah did not identify Petitioner as one of the shooters to anyone, either at the residence or at the hospital, despite the fact that Petitioner was a family friend who was well-known to Desiah, Shalik, and Releford, by Petitioner's nickname "Pooper." *Id.* at 340-41 (Desiah), 364-65 (Desiah), 509-10 (Shalik), 544-45 (Releford). Desiah only told Hill she could "identify their faces," and that "one of their names start [*sic*] with a K," but denied knowing Petitioner by any name other than "Pooper." *Id.* at 424-25 (Hill).

On September 16, 2006, Desiah selected co-defendant Wilson from a photo-array ("first photo array") as one of the intruders, which Desiah was 75% certain depicted one of the intruders.  Hearing Tr.[11] at 17-21.  Hill again met with Desiah on September 21, 2006, when Hill showed Desiah two photo arrays, with Wilson's photograph in one array ("second photo array"),[12] and Petitioner's in the other ("third photo array"). *Id.* at 22.  Upon viewing the second photo array, Desiah again selected the photograph of Wilson, whom Desiah identified as "KB," as depicting one of the

---

[10] Where necessary for clarity, the testifying witness is identified.
[11] References to "Hearing Tr. at __" are to the transcript of a February 9, 2007 hearing ("Hearing"), held on pre-trial motions filed by Petitioner and Wilson seeking relief pursuant to *Payton v. New York*, 445 U.S. 573 (1980) (determining whether warrantless entry into a suspect's home to effect an arrest is supported by both probable cause and exigent circumstances), *United States v. Wade*, 388 U.S. 218 (1967) (admissibility of pre-trial identification), and *People v. Huntley*, 371 N.E.2d 794 (N.Y. 1977) (admissibility of pre-trial statements).  The  portions of the Hearing referenced are to testimony given by Hill.
[12] The second photo array contained a photograph of Wilson different that the one contained in the first photo array because after viewing the first photo array, Desiah was only 75% certain of her identification of Wilson as one of the intruders.  Hearing Tr. at 23.  The photograph of Wilson used in the second photo array was more recent. *Id.*

intruders, stating she was 75% to 85% certain of the identity. *Id.* at 25-26, 123-24.

Desiah, upon viewing the third photo array, immediately identified Petitioner as the other

intruder, asserting she was 100% sure of the identification, referring to him as "Booper,"

*id.* at 27-28, 67-69, and explaining she had known "Booper" for some time and that he

had been to her house before. *Id.* at 29. Shalik was unable to identify Petitioner from a

photo array. ST Tr. at 517-20.

   On October 6, 2006, Petitioner, accompanied by Rochester Police Officer

Elwood, voluntarily went to the Rochester Police Department Public Safety Building,

where Petitioner was interviewed by Hill about the shooting.[13]  Hearing Tr. at 37-38, 74.

Petitioner provided an alibi, claiming to have been at work at a Taco Bell restaurant at

the time of the incident, *id.* at 44, but when confronted with a time card for his workplace

that did not corroborate Petitioner's alibi and showing Petitioner left work at Taco Bell

several hours prior to the shooting, Petitioner changed his story, asserting he was at a

girlfriend's house at the time of the shooting. SR 7.  Petitioner also shared a rumor that

"KB" and "KB's brother" were the perpetrators of the September 14, 2006 shooting, SR

7, stating KB had been imprisoned with Petitioner but denying talking to KB since being

released from jail. SR at 8. After concluding his statement, Petitioner was arrested for

the shooting.[14]  *Id.* at 44.  On October 9, 2006, Releford, who had remained hospitalized

for his injuries sustained in the shooting, regained consciousness, ST Tr. at 620, and

the breathing tube with which Releford had been intubated since September 14, 2006,

was removed the next day. *Id.* at 611-12; Hearing Tr. at 30-31.  On October 11, 2006,

Releford viewed two photo arrays from which Releford selected Wilson, referring to him

---

[13] Prior to the October 6, 2006 interview, Hill advised Petitioner of his rights pursuant to *Miranda v.
Arizona*, 384 U.S. 436 (1966).  Hearing Tr. at 79-80.
[14] The co-defendant was arrested on October 25, 2006.

as "KB," as one of the intruders and Petitioner, referring to him as "Pooper," as the other intruder. Hearing Tr. at 30-37. On October 24, 2006, Desiah identified Petitioner in a line-up. SR 9.

On November 16, 2006, Petitioner and Wilson were jointly charged by a grand jury in an 11-count indictment ("Indictment"). As mentioned, Petitioner and his co-defendant were tried together twice, with both trials before Acting New York Supreme Court Justice Stephen R. Sirkin ("Justice Sirkin"), and the first trial ending in a deadlocked jury. The first trial is, thus, largely irrelevant to the court's consideration of the Amended Petition, except for the prosecution's dismissal of two counts of the Indictment prior to submitting the case to the jury in the first trial, and which also were not presented to the jury in the second trial, and the denial of Petitioner's pre-trial motion to be tried separately from his co-defendant Wilson.

Specifically, prior to the first trial Petitioner moved pursuant to N.Y. Crim. Proc. Law § 200.40(1) to be tried separately from co-defendant Wilson. SR 14. Monroe County Judge Alex R. Renzi ("Judge Renzi"), denied the motion on June 6, 2007. June 6, 2007 Decision at 2-4 (TR Vol. II, Dkt. 13-1 at 12-14). In denying the motion, Judge Renzi noted both Petitioner and Wilson had filed motions to sever, each asserting an alibi defense, but that Petitioner's alibi statement did not implicate Wilson, and Wilson's statement was only that he knew Petitioner. *Id.* Prior to the second trial before Justice Sirkin, Petitioner again moved for severance. ST Tr. at 4-9 (Tr. Vol. III, Dkt. 13-4 at 5-10). Justice Sirkin, while acknowledging that the earlier severance motions were not decided by him, stated Petitioner's renewed severance motion had already been heard and refused to entertain it again. *Id.* at 9.

9

At the second trial, Desiah testified that during the incident, "KB' was the first intruder she saw, that KB's face was not covered, and that Petitioner was the second intruder, adding that at first Petitioner held up a jacket, partially obscuring Desiah's view of Petitioner's face.  ST Tr. at 322-25 (Desiah), and 331-32 (Desiah).  Shalik testified that the second intruder was someone he knew by the nickname "KB," *id.* at 489-90, before testifying that Petitioner, known as "Pooper" was the second intruder.  *Id.* at 503-04, 510-11 (Shalik). Shalik was impeached with testimony from the first trial, where Shalik identified as KB the intruder whose face was partially obscured by his sister's jacket that was placed on his head, explaining that Shalik knew KB as the father of one of Shalik's football teammates.  *Id.* at 513-16.  Shalik also admitted discussing the incident with his mother, Desiah, and Releford.  *Id.* at 521-22.  Upon being called as a witness at the second trial, Releford's criminal record was presented to the jury, ST Tr. at 529-32, before Releford identified Petitioner as one of the intruders, explaining that Releford had known Petitioner for about ten years and hung out with him on occasion, seeing him three or four times a week.  *Id.* at 544-45.  On cross-examination, Releford was again confronted with his criminal record for, *inter alia*, felony possession of drugs and weapons, and was also questioned about his history of dealing drugs.  *Id.* at 558-68.

Both Petitioner and Wilson presented defenses challenging their identification as the perpetrators of the charged crimes, essentially pointing out inconsistencies in their identification by Releford, Desiah, and Shalik, and asserting alibis as to their whereabouts at the time of the shootings.  In charging the jury at the second trial, Justice Sirkin instructed that the jury was not permitted to draw any adverse inference

based on the fact that neither Petitioner nor his co-defendant testified.  After deliberating, the jury convicted both Petitioner and co-defendant on all nine counts.

## DISCUSSION

As stated, Background, *supra*, at 3-4, Petitioner asserts four grounds for federal habeas relief including (1) it was unclear as to which shooting the jury's verdict pertained with regard to the attempted murder in the second degree conviction, First Ground; (2) trial court error in failing to specify the sentences for two unspecified counts were to run concurrently, Second Ground; (3) trial court error in failing to sever the trials of Petitioner and his co-defendant, Third Ground; and (4) a "material element" of the second degree assault count was omitted from the indictment, rendering the count jurisdictionally defective, Fourth Ground.  In opposing the Amended Petition, Respondent argues none of the grounds on which Petitioner seeks habeas relief has any merit.  In particular, none of the four asserted grounds has been properly exhausted, resulting in an irremediable procedural default barring federal habeas review.  Respondent's Memorandum at 12-17.  The relief Petitioner seeks in the First and Second Grounds has already been granted by the Appellate Division's modification of the judgment of conviction.  *Id.* at 17-18.  The Third Ground challenging as unconstitutional the trial court's failure to sever the trials of Petitioner and his co-defendant is unrecognizable under federal habeas law as it asserts only a violation of state law.  *Id.* at 18-24.  Respondent further maintains that Petitioner's claim that the prosecution failed to properly charge second degree assault in the Indictment is based

solely on state law over which this court is without subject matter jurisdiction. *Id.* at 24-25.

## 1.    Standard of Review

In reviewing a state prisoner's petition for habeas relief pursuant to 28 U.S.C. § 2254, a district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution, or any laws or treaties of the United States. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *reh'g denied*, 501 U.S. 1277 (1991).  Although traditionally, a state petitioner's federal habeas corpus petition may be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims, *Rose v. Lundy*, 455 U.S. 509 (1982), under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court now is permitted to deny a state prisoner's habeas corpus petition on the merits, even though the prisoner has not exhausted available state remedies.  28 U.S.C. § 2254(b)(2).  *See Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) ("A district court also may, as the court below apparently did, deny a [habeas] petition on the merits even if it contains an unexhausted claim (citing 28 U.S.C. § 2254(b)(2))).

In reviewing habeas petitions, federal courts do not function as appellate courts to review matters within the jurisdiction of the state, nor to review specific rulings and decisions of state trial and appellate courts not involving federal constitutional issues; rather, the court determines whether the proceedings in the state court amount to a violation of federal constitutional rights.  *Coleman*, 501 U.S. at 729.  Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial.  *Cupp v. Naughton*,

414 U.S. 141 (1973).  Pursuant to 28 U.S.C. § 2254, as amended by AEDPA, a federal

court must give substantial deference to a state court determination that has

"adjudicated [the federal constitutional claim] *on its merits*."  28 U.S.C. § 2254(d) (italics

added).  *Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).  Specifically, AEDPA

requires that where a state court has adjudicated the merits of a petitioner's federal

claim, habeas relief may not be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254(e), the state court's determination as to evidentiary

matters is presumed to be correct unless the federal habeas court concludes that the

relevant state court determination is not fairly supported by the record.  *Sumner v. Mata*,

449 U.S. 539, 546-47 (1981).  Otherwise, the burden rests on the petitioner to establish,

by clear and convincing evidence, that the factual determination is erroneous.  28

U.S.C. § 1154(e)(1).  Further, § 2254(e) applies, by its terms, "to factual determinations

made by state courts, whether the court be a trial court or an appellate court."  *Sumner*,

449 U.S. at 547.  The state court's determination is, however, presumed to be correct

unless the federal habeas court concludes that the relevant state court determination is

not fairly supported by the record.  *Sumner*, 449 U.S. at 546-47.  Absent these factors,

the burden rests on the petitioner to establish, by clear and convincing evidence, that

the factual determination is erroneous.  *Id.*

13

A state prisoner petitioning under 28 U.S.C. § 2254 for habeas relief is not entitled to an evidentiary hearing by the federal district court, although the granting of a hearing is within the federal court's discretion.  *Pagan v. Keane*, 984 F.2d 61, 63 (2d Cir. 1993); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 4-5 (1992) (citing *Townsend v. Sain*, 372 U.S. 293 (1963)).  In the instant case, the court is in possession of the complete state record, including the transcripts of the motions, hearings, and both the first and second trials, as well as the briefs filed in connection with Petitioner's direct appeal to the Appellate Division and the Court of Appeals.  Petitioner has not requested the court conduct an evidentiary hearing prior to resolving his claims for habeas relief, nor has Petitioner challenged the court record below as inaccurate.  Accordingly, in its discretion, the court finds an evidentiary hearing unnecessary.

**2.**     **Exhaustion**

Respondent maintains Petitioner failed to exhaust any of the four grounds on which habeas relief is sought because the First, Second, and Fourth Grounds were not presented in the petition for leave to appeal to the Court of Appeals, Respondent's Memorandum at 12, and the Third Ground concerning severance, although presented in his leave petition, was couched solely in terms of New York law.  *Id.* at 12-14. Respondent further maintains that because the time in which Petitioner had to exhaust his claims in state court has expired, the claims can no longer be raised in state court, such that Petitioner has procedurally defaulted on all four grounds.  *Id.* at 14-16.

"'[W]hether a federal constitutional question was sufficiently asserted in state courts to form the basis of a federal habeas petition is . . . a question of federal law which the federal courts must resolve for themselves.'"  *Bierenbaum v. Graham*, 607

F.3d 36, 48 (2d Cir. 2010) (quoting *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (additional internal quotation marks and citation omitted)).   "A state prisoner may fairly present to the state courts the constitutional nature of his claim by 'claim[ing] the deprivation of a particular right specifically protected by the Constitution.'"   *Id.* (quoting *Daye v. Att'y Gen. of the State of N.Y.*, 696 F.2d 186, 193 (2d Cir. 1982)).   Provided the constitutional nature of a habeas petitioner's claim is presented to the state courts, "'to qualify as an adjudication 'on the merits,' a state court decision need not mention a particular argument or explain the reasons for rejecting it.'"   *Id.* (quoting *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003), and finding habeas petitioner, by presenting confrontation clause claim to Appellate Division, where such claim was not specifically addressed, and to the Court of Appeals, which denied leave to appeal without explanation, had fairly alerted the state courts to the constitutional claim as to exhaust available state remedies regarding the claim).   *See also Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (finding Sixth Amendment claim was adjudicated on the merits where state court dismissed claim stating "defendant's remaining contentions are without merit.").

The record in the instant case establishes, as Respondent asserts, Respondent's Memorandum at 12, that although all four grounds on which Petitioner seeks habeas relief were included in his direct appeal to the Appellate Division, Petitioner's Appellate Division Brief[15] at 11-20 (First Ground), 21-27 (Second Ground), 28- 35 (Third Ground), and 36-40 (Fourth Ground), Petitioner did not include the First, Second, and Fourth Grounds in his petition seeking leave to appeal to the Court of Appeals; rather, in the

---

[15] Filed as an attachment to the Amended Petition, and as part of the State Record at SR 52-99.

Application for Leave to Appeal to the New York Court of Appeals ("Leave Petition"),[16]

however, Petitioner specifically states "[t]his leave application is limited to Point III (the

denial of defendant's motion for a separate trial from his co-defendant)."  SR at 120.

Petitioner thus presented to the Court of Appeals only the Third Ground and has failed

to exhaust state court remedies as to the First, Second, and Fourth Grounds.

Furthermore, in presenting the state claim presented here as to the Third Ground,

Petitioner referenced Petitioner's Appellate Division Brief, *id.*, but provides no additional

argument, which is significant because Petitioner did not present his failure to sever

claim to the Appellate Division as a federal claim.[17]  In particular, a plain reading of

Petitioner's Appellate Division Brief establishes Petitioner's failure to sever argument is

couched as a violation of "New York's minimum fair trial standards."  Petitioner's

Appellate Division Brief[18] at 32.  Petitioner's Appellate Division Brief is devoid of any

reference to the Fourteenth Amendment, and the bare reference to "fair trial"

requirements, *id.*, is insufficient to alert the state court that a federal due process claim

is being asserted.  *See Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984)

(considering reference in appellate brief to "denial of a fair trial" insufficient to alert state

court that federal constitutional claim is being raised); *Kirksey v. Jones*, 673 F.2d 58, 60

---

[16] Filed at SR 120.

[17] Respondent maintains, Respondent's Memorandum at 13 n. 3, and Petitioner does not deny, that although Petitioner's pre-trial motion to sever included a federal constitutional claim under *Bruton v. United States*, 391 U.S. 123, 125 (1968) (interpreting Sixth Amendment Confrontation Clause as precluding the introduction of a co-defendant's confession tending to incriminate the defendant when such defendant cannot cross-examine the declarant co-defendant), such "*Bruton* claim" was omitted from the Appellate Division Brief, possibly because the prosecution never introduced at trial co-defendant Wilson's statement that he knew Petitioner.  Accordingly, *Bruton* provides no basis for habeas relief.

[18] Because Petitioner relies in support of habeas relief on the arguments presented on his direct appeal to the Appellate Division, *see* Amended Petition at 7-8 (referencing Petitioner's Appellate Division Brief for each of the four grounds on which Petitioner seeks habeas relief), in discussing Petitioner's arguments in support of his claims for habeas relief, the court also references the relevant portion of Petitioner's Appellate Division Brief.

(2d Cir. 1982) ("the [federal habeas] exhaustion requirement is not automatically satisfied every time an alleged trial error is claimed to deny a defendant a 'fair trial.'"). Accordingly, Petitioner, by failing to present to the Appellate Division the "constitutional nature of his claim," *i.e.*, the trial court's refusal to grant a severance, has also failed to exhaust such claim. *Bierenbaum*, 607 F.3d at 48.

Further, not only has Petitioner failed to exhaust in state court any of the four grounds on which Petitioner seeks habeas relief, but Petitioner has also procedurally defaulted on such claims which may no longer be raised in state court.  *See* N.Y. Crim. Pro. Law § 460.10[1](a) (providing, as relevant, direct appeal of criminal conviction must be filed within 30 days after imposition of sentence), and § 460.10[5](a) (providing, as relevant, appeal to the Court of Appeals must be taken within 30 days after service of the Appellate Division's order).  A criminal defendant is entitled to only one appeal to the Appellate Division, followed by only one request for leave to appeal to the Court of Appeals, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citing N.Y. Crim. Pro. Law §§ 440.10(s)(1), and 450.10(1); and N.Y. Court R. § 500.10(a)).  Where a habeas petitioner has procedurally defaulted on a claim, the claim is forfeited, *Wainwright v. Sykes*, 433 U.S. 72, 83 (1977), requiring that before a federal court may consider the claim on a habeas petition, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748-50).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'"  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  In the instant case, Petitioner has not pointed to any such "objective factor external to the defense [that] impeded" Petitioner's efforts to comply with New York's criminal procedural rules. As such, Petitioner has failed to establish any cause to overcome the bar posed by his procedural fault.

In the habeas context, "a claim of actual innocence must be both 'credible' and 'compelling.'"  *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 521 (2006)).  A "credible" claim of actual innocence must be supported with new reliable evidence that was not presented at trial, whether exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.  *Rivas*, 687 F.3d at 541.  A "compelling" claim of actual innocence requires the petitioner demonstrate that, more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.  *Id*.  Here, Petitioner has not presented any credible and compelling evidence supporting a claim of actual innocence.

Having failed to argue, much less demonstrate, either cause and prejudice, or that the court's failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice based on credible and compelling evidence that Petitioner is actually innocent of the crimes for which he seeks habeas relief, there is no basis on which the court may consider such claim.  The Amended Petition thus should

be DISMISSED based on Petitioner's failure to exhaust each of the four grounds on which habeas relief is sought.

Although dismissal of the Amended Petition based on Petitioner's failure to exhaust any of the four grounds on which habeas relief is sought is recommended, because this matter is before the undersigned for a report and recommendation, the undersigned considers, in the alternative, the merits of each of Petitioner's grounds, as permitted under 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**3.    Mootness**

In his First Ground, Petitioner asserts the attempted murder in the second degree conviction "was intertwined with other shootings" rendering it unclear as to which shooting the jury's verdict was reached, Amended Petition, First Ground; Petitioner's Appellate Division Brief at 11-20, and the trial court erred by failing to order the sentences for the two felony assault counts were to run concurrently with each other, Amended Petition, Second Ground; Petitioner's Appellate Division Brief at 21-27.  As Respondent maintains, Respondent's Memorandum at 17-18, the habeas relief Plaintiff seeks in his First and Second Grounds was already provided when the Appellate Division modified Petitioner's judgment of conviction.  Specifically, Petitioner's claim that his second degree attempted murder conviction "was intertwined with other shootings," such that it is unclear as to which shooting the jury's verdict pertained, Amended Petition, First Ground, was rendered moot when the Appellate Division reversed the Petitioner's conviction on the charge which was then dismissed.  *People v. Boykins*, 924

N.Y.S.2d 711 (4th Dep't. 2011).  Similarly, Petitioner's claim that the trial court erred by

failing to direct that sentences for the assault, robbery, and burglary convictions should

run concurrently, Amended Petition, Second Ground, was also rendered moot when the

Appellate Division further modified the judgment to provide for the sentences imposed

on all eight remaining counts of which Petitioner was convicted to run concurrently, a

modification to which the prosecution conceded.  *Id.*  Because the relief Petitioner seeks

in his First and Second Grounds has already been granted, such grounds are now

moot.  *See Linares v. Barkley*, 2010 WL 4962998, at * 3 (N.D.N.Y. Oct. 8, 2010)

(collecting cases dismissing habeas petitions seeking relief petitioner had already been

obtained).

Accordingly, the Amended Petition's First and Second Grounds are moot and

provide no basis for habeas relief.

**4.     Failure to Sever**

In his Third Ground for habeas relief based on the trial court's denial of

Petitioner's motion to be tried in a separate trial from co-defendant Wilson, Petitioner

maintains that although the trial judge ruled on Petitioner's *Sandoval* motion that should

Petitioner take the stand in his own defense, the prosecution could elicit from Petitioner

that he had a prior felony conviction in May 2002, but not the nature of the conviction,

*i.e.*, a federal charge of possession of a firearm in furtherance of drug trafficking,

Petitioner's Appellate Brief at 31, because the *Sandoval* ruling would not prevent

Wilson's attorney from cross-examining Petitioner regarding the nature of his prior

felony conviction, Petitioner was not free to testify on his own behalf.  *Id.*  According to

Petitioner, because the evidence against him was scant, with no physical evidence such

as DNA, fingerprints, possession of stolen property, and included conflicting versions of what happened during the incident, especially inconsistent identification evidence presented by Desiah and Shalik, without Petitioner's testimony, there was a "danger" that the jury would use the evidence offered against Wilson, *i.e.*, the positive identifications by Releford and Desiah, to "fill in the gaps" in the evidence against Petitioner. *Id.* at 31-34. Petitioner further maintains that being tried with Wilson, who requested the jury charge include that the jury could not make an inference unfavorable to Wilson based on Wilson's failure to testify also forced Petitioner to accept the inclusion of such "no adverse inference charge," because giving an adverse inference charge only to Wilson would have implied that the jury could draw an adverse inference against Petitioner for failing to testify. *Id.* at 34-35. According to Respondent, Petitioner's Third Ground challenging as unconstitutional the trial court's failure to sever the trials of Petitioner and his co-defendant is unrecognizable under habeas law as it asserts only a violation of state law. Respondent's Memorandum at 18-24. Respondent is correct.

In the only case on which Petitioner relied in presenting his failure to sever claim to the Appellate Division, Petitioner's Appellate Division Brief at 32, the New York Court of Appeals recognized that under New York's fair trial standards, "the defendant's right to a separate trial is broader than his right to confrontation and may be found to exist even where the codefendant has remained completely silent both before and during trial." *People v. Payne*, 315 N.E.2d 762, 765 (N.Y. 1974). Generally, in the context of a petition seeking habeas relief, "the decision whether to grant a severance is 'committed to the sound discretion of the trial judge.'" *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990)

(quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) ("[A] denial of

such a motion will be reversed only upon a showing of clear abuse of that discretion."),

*cert. denied*, 493 U.S. 1081 (1990)).  "Joinder rules are a matter of state law and

'federal *habeas corpus* relief does not lie for errors of state law.'"  *Funches v. Walsh*,

2006 WL 1063287, at * 8 (S.D.N.Y. Apr. 21, 2006) (quoting *Estelle v. McGuire*, 502 U.S.

62, 67 (1991)).

It is well-settled that *habeas* relief is available for errors of state law rising to the

level of a federal constitutional violation, but only where such error had a "'substantial or

injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*,

507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

(1946)).  To grant federal habeas relief based on the improper denial of a motion to

sever, the federal court must find the joinder was so prejudicial as to deny the petitioner

a fair trial, "'not that he might have had a better chance for acquittal at a separate trial.'"

*Grant*, 921 F.2d at 31 (quoting *United States v. Burke*, 700 F.2d 70, 83 (2d Cir.), *cert.

denied*, 464 U.S. 816 (1983)).  "[A] joint trial is fundamentally unfair where codefendants

present mutually antagonistic defenses."  *Id.* (citing *United States v. Serpoosh*, 919 F.2d

835, 837-38 (2d Cir. 1990)).  Nevertheless, "'[a] simple showing of some antagonism

between defendants' theories of defense does not require severance.'"  *Id.* (quoting

*United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.) (quoting *United States v.

Carpentier*, 689 F.2d 21, 27-28 (2d Cir. 1982)), *cert. denied*, 469 U.S. 918, 934 (1984).

Instead, "separate trials are required only upon a showing that 'the jury, in order to

believe the core of testimony offered on behalf of [one] defendant, must necessarily

disbelieve the testimony offered on behalf of his codefendant.'"  *Id.* (quoting *Serpoosh*,

919 F.2d at 838) (internal quotation marks and citations omitted).  Simply, antagonistic defenses require severance only where "the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved," *United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir. 1989), or where "the jury will infer that both defendants are guilty solely due to the conflict."  *Serpoosh*, 919 F.2d at 838.  The instant record does not support habeas relief based on the trial court's denial of Petitioner's motion to sever.

Specifically, the testimony Petitioner maintains he was precluded from offering by being tried with his co-defendant, Wilson, would not necessarily have exonerated him because the defense presented by Petitioner – misidentification and an alibi – was not dependent on the jury either believing or disbelieving Wilson's defense which also argued misidentification and a different factual alibi; rather, the two defenses were mutually exclusive.  Specifically, Wilson maintained in connection with the severance motion that he had six witnesses willing to testify that Wilson was elsewhere at the date and time of the shooting, SR 44, although Wilson did not present any evidence at trial. If, upon taking the stand to testify on his own behalf, Wilson had cross-examined Petitioner, including with regard to Petitioner's criminal past, such testimony therefore would not necessarily have any impact on Petitioner's misidentification and alibi defense; rather, issues of possible misidentification would turn on the specifics of the pre-trial identification procedures used for Wilson and Petitioner.  As such, none of Petitioner's arguments on this ground establishes that the conflict between the defenses of Petitioner and Wilson were so irreconcilable that Petitioner's defenses could be accepted only if Wilson's were disbelieved, *Tutino*, 883 F.2d at 1130, or that the jury,

based on the conflicting defenses, necessarily would have inferred both Petitioner and

Wilson were guilty.  *Serpoosh*, 919 F.2d at 838.  Here, the evidence supports no such

suppositions.  Accordingly, the Amended Petition should be DISMISSED as to the Third

Ground.

**5.    Indictment on Second Degree Assault**

Petitioner claims a material element of the second degree assault charge, *i.e.*, a

valid predicate offense, specifically, that the requisite underlying felony was not a felony

defined in Article 130 of N.Y. Penal Law, for which corroboration is required for

conviction, was omitted from the Indictment, rendering the count jurisdictionally

defective.  Fourth Ground; Petitioner's Appellate Division Brief at 36-40.  In opposing

habeas relief on this ground, Respondent relies on the Appellate Division's rejection of

such claim because the status of the requisite underlying or predicate felony as one not

requiring corroboration is not a material element of second degree assault under N.Y.

Penal Law § 120.05[6], maintaining what qualifies as an essential element of a state

crime is a "quintessential question of State law" over which this court has no jurisdiction

on habeas review.  Respondent's Memorandum at 23-24.

Generally, "[h]abeas corpus is not available to test the sufficiency of the

indictment."  *United States ex rel. Tangredi v. Wallack*, 343 F.2d 752, 753 (2d Cir. 1965)

(citing *Knewel v. Egan*, 268 U.S. 442, 446 (1925)).  Further, any possible problem with

the Indictment was cured by Petitioner's conviction.  *See United States v. Mechanik*,

475 U.S. 66, 73 (1986) (finding "jury's verdict rendered harmless any conceivable error

in the charging decision that might have flowed from the violation.").  It is settled that

absent a constitutional challenge to making a certain conduct a criminal offense, a

federal habeas court must defer to a state's highest court's determination as to the elements of a crime. *Jackson v. Virginia*, 443 U.S. 307, 324, n. 16 (1979) (requiring federal courts on habeas review to look to "the substantive elements of the criminal offense as defined by state law."); *see Einaugler v. Supreme Court of State of New York*, 109 F.3d 836, 839 (2d Cir. 1997) (federal habeas court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." (citing cases)). The New York Court of Appeals has held that "[t]he incorporation [into the indictment] by specific reference to the statute operates without more to constitute allegations of all the elements of the crime." *People v. D'Angelo*, 780 N.E.2d 496, 497-98 (N.Y. 2002) (citing cases)).

Here, Petitioner maintains the Indictment failed to effectively charge Petitioner with second degree assault by failing to restrict the underlying felony to the felonies specified in Art. 130 of New York Penal Law as required under N.Y. Penal Law § 120.50[6], Petitioner's Appellate Division Brief at 36-37. The Indictment charged both Petitioner and Wilson

> of the crime of Assault in the Second Degree, in violation of Sections 20.00 and 120.05, Subdivision 6 of the Penal Law of the State of New York, committed as follows:
>> The defendants, on or about September 14, 2006, in the County of Monroe, State of New York, while acting alone or in concert with another, in the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, caused physical injury to a person, to wit, Shalike Maxwell, who was not a participant in the crime.

Indictment, Sixth Count.

As relevant, New York Penal Law provides

A person is guilty of assault in the second degree when:

\* \* \*

6. In the course of and in furtherance of the commission or attempted commission of a felony, other than a felony defined in article one hundred thirty which requires corroboration for conviction, or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants; . . . .

N.Y. Penal Law § 120.05[6].

Accordingly, the Indictment's specific reference to N.Y. Penal Law § 120.05[6], incorporates into the Indictment allegations of all the elements of § 120.05[6], without requiring further specification that the predicate felony is one not requiring corroboration, *D'Angelo*, 780 N.E.2d at 497-98, as defined by New York's highest court, *Jackson*, 443 U.S.at 324, n. 16, thereby precluding habeas review.

The Amended Petition thus should be DISMISSED on Petitioner's Fourth Ground.

## CONCLUSION

Based on the foregoing, the court finds none of the four grounds on which

Petitioner seeks habeas relief have any merit and, accordingly, the Amended Petition

should be DISMISSED.

Further, as the court finds there is no substantial question presented for appellate

review, a certificate of appealability should not issue.  28 U.S.C. § 2253, as amended by

the Antiterrorism and Effective Death Penalty Act of 1996.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        January 24, 2017
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 24, 2017
            Buffalo, New York

28